**SHARRON MOTOR LINES,
INC., Petitioner,**

v.

**UNITED STATES of America and
Interstate Commerce Commission,
Respondents.**

No. 78–2670.

United States Court of Appeals,
Fifth Circuit.

Jan. 5, 1981.

Carlton, Boles, Clark & Stichweh, John P. Carlton, Birmingham, Ala., for petitioner.

Nancy Garrison, Robert L. Thompson, Attys., Appellate Section, Antitrust Div., U. S. Dept. of Justice, Washington, D. C., for United States.

Evelyn G. Kitay, Atty., I. C. C., Washington, D. C., for I. C. C.

Donald B. Sweeney, Jr., Birmingham, Ala., for intervenors Bowman Transp., Inc., et al.

Frank D. Hall, Atlanta, Ga., for intervenor Barnes Freight Lines, Inc.

Before GEE and RANDALL, Circuit Judges, and LYNNE *, District Judge.

GEE, Circuit Judge:

Sharron Motor Lines (Sharron) is a small common carrier based in Meridian, Mississippi, licensed by the Interstate Commerce Commission (ICC) to carry general commodities. Most of its business has been in Alabama and Mississippi. Because it lacked authority to serve Atlanta, Sharron has had to interline shipments to and from Atlanta with other carriers. In 1974 Sharron began to encounter difficulties in achieving satisfactory interlining on Atlanta traffic. Sharron applied for and, on November 7, 1974, received emergency temporary authority (ETA) to serve Atlanta from points on specified routes in Alabama and Mississippi. Sharron began Atlanta service the day after it received its ETA, but on December 19, 1974, the ICC, without explanation, summarily revoked Sharron's ETA. On January 19, 1975, the Commission denied Sharron's request for corresponding temporary authority to serve Atlanta; in April of that year Sharron filed for permanent Atlanta authority. After hearings conducted in September, November and December 1976, the ICC, on January 25, 1978, denied Sharron's application for permanent authority to serve Atlanta. On June 20, 1978, the Commission affirmed the joint board's denial of Sharron's application. Sharron has exhausted all administrative appeals and now seeks to overturn the ICC's decision in this court. The United States has aligned itself with Sharron in challenging the ICC's action.

### Sharron's Treatment

Shortly after Sharron was granted an ETA to serve Atlanta, a competitor, Ross Neely Express, Inc. (RNX) received a similar ETA. In November 1974, the Commission revoked RNX's ETA, reinstated it the same day, and then revoked Sharron's ETA a few days later. RNX applied for temporary authority (TA) to serve Atlanta in December 1974, and on March 13, 1975, received this temporary authority. On April 21, 1975, RNX filed an application for permanent corresponding authority. The Commission scheduled RNX's hearings for permanent authority before Sharron's hearings. In the course of RNX's hearings, it came to light that RNX had falsified reports upon which it relied for authorization to serve Atlanta. Consequently, on October 21, 1975, the Commission dismissed RNX's application and its temporary authority automatically lapsed. One week later, however, RNX petitioned for reinstatement of its application for permanent authority and corresponding TA, and on December 15, 1975, the ICC granted this petition.

After Sharron's application for permanent authority was denied by the Commission's joint board on January 25, 1978, we issued our opinion in *Barnes Freight Line, Inc. v. ICC*, 569 F.2d 912, 923–24 (5th Cir. 1978), which set aside the ICC's order reinstating RNX's TA as a shocking affront to the integrity of the administrative process in light of the confessed and outright fraud that RNX had perpetrated on the ICC. Pursuant to this court's order, RNX discontinued its Atlanta operations on June 2, 1978. On June 20, 1978, the ICC affirmed the joint board's initial denial of Sharron's application for permanent authority to serve Atlanta. A few days later, on June 26, 1978, the Commission granted ETA to serve Atlanta to RNX and another carrier, Barnes. Sharron then petitioned the agency to reconsider its application for permanent authority, but the petition was denied without explanation on October 6, 1978.

 As a federal agency, the ICC must act in an evenhanded manner in performing its regulatory duties. *Frozen Food Express, Inc. v. United States*, 535 F.2d 877, 879–80 (5th Cir. 1976); *Eagle Motor Lines v. ICC*, 545 F.2d 1015, 1017–18 (5th Cir.

---

* District Judge of the Northern District of Alabama, sitting by designation.

1977). As we stated with respect to another federal agency in *Mary Carter Paint Co. v. FTC*, 333 F.2d 654, 660 (5th Cir. 1964) (Brown, J., concurring):

Our complex society now demands administrative agencies. The variety of problems make absolute consistency, perfect symmetry, impossible. And the law reflects its good sense by not expecting it. But law does not permit an agency to grant one person the right to do that which it denies to another similarly situated. There may not be a rule for Monday, another for Tuesday, a rule for general application, but denied outright in a specific case.

The Commission's decision to grant RNX and Barnes TA to serve Atlanta only nine days after denying Sharron permanent authority to do so and its refusal to reconcile Sharron's application after granting the TAs manifests uneven treatment that cannot be tolerated. The ICC seeks to justify its unequal treatment of Sharron by claiming that Sharron's proposed routes differed from those of Barnes and RNX so that in fact Sharron was not similarly situated and thus not unequally treated. As the United States and Sharron point out, however, the territorial differences between RNX, Barnes and Sharron are insignificant. The route changes do not differentiate Sharron from RNX and Barnes with respect to the ICC's rationale that it was necessary to deny Sharron's petition because allowing additional direct service to Atlanta would be destructively competitive and would undermine the ability of companies with existing direct service to serve rural areas by diverting the profitable city to Atlanta business, since existing companies supported rural service with the more profitable service from the cities to Atlanta. That rationale would apply equally to RNX and Barnes, since both of these companies have previously had only interline and not direct service to Atlanta. See *Barnes Freight, supra* at 916. The ICC's claim that its disparate treatment of Sharron was justified on the grounds that Sharron sought permanent authority whereas it granted RNX and Barnes only temporary authority

is also without merit. It is true that different standards apply to grants of temporary and permanent authority. However, the burden on applicants to obtain a TA is *greater* than that for obtaining permanent authority. Under 49 U.S.C. § 310(d) an applicant for temporary authority must establish that there is an *immediate and urgent need for the prospective service*, while under 49 U.S.C. §§ 306, 307, an applicant for permanent authority must be fit, willing, and able to perform the service proposed, and the service must be *"required by the present or future public convenience and necessity."* While the arbitrary and capricious "some evidence" standard of judicial review of ICC grants or denials of temporary authority is more permissive and less searching than the substantial evidence test for judicial review of grants or denials of permanent authority, see *Barnes Freight Line*, 569 F.2d at 916 n.4; *East Texas Motor Freight Lines v. United States*, 593 F.2d 691, 696 (5th Cir. 1979), the substantive standard used by the ICC for the issuance of TA is thus more rigorous than for grants of permanent authority. Moreover, the ICC denied Sharron's corresponding TA application as well as its request for permanent authority. Sharron was thus similarly situated with respect to Barnes and RNX, and the ICC's action must be set aside because it failed to accord uniform fair treatment to Sharron and its competitors.

### The Correct Legal Standards

In deciding whether to grant a motor carrier permanent authority, the ICC must consider all relevant factors, *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962); *Transamerican Van Serv., Inc. v. United States*, 421 F.Supp. 308, 320–31 (N.D.Tex.1976). These include

(1) whether the new operation or service will serve a useful public purpose, be responsible to a public demand or need;
(2) whether this purpose can and will be served by existing lines or carriers; and
(3) whether the new operation or service proposed can be served by applicant with-

**1118**

out endangering or impairing the operations of existing carriers contrary to the public interest. *Pan American Bus Lines Operation*, 1 MCC 190, 203 (1936). The Commission must consider, as a factor indicative of public need, the possible benefits that could be expected from increased competition. *P. C. White Truck Line v. ICC*, 551 F.2d 1326 (D.C.Cir. 1977); *Sawyer Transport, Inc. v. United States*, 565 F.2d 474, 478–79 (9th Cir. 1977). Additional competition may provide a reliable spur to improved service. *See, e. g., Household Goods*, 131 MCC 20, 30 (1978); *Mayfield Sons Trucking Co.*, 129 MCC 432, 436 (1976). The Commission must also consider the inherent advantages of the proposed service. *Schaffer Transportation Co. v. United States*, 355 U.S. 83, 89–90, 78 S.Ct. 173, 177–178, 2 L.Ed.2d 117 (1957); *Niedert Motor Service, Inc. v. United States*, 583 F.2d 954, 962 (7th Cir. 1978).

■ The ICC did not correctly consider relevant factors when it denied Sharron's application for authority to serve Atlanta. It required the company to prove either that existing service was inadequate or that its proposed service was superior. The ICC acknowledged that Sharron's service might be faster then existing service but found that because the protestants' services were not inadequate and Sharron's service was not "so superior as to constitute a significant improvement in motor carrier service," Sharron had failed to prove a public need for its service. But the ICC may not deny an application simply because existing service is not so bad as to be inadequate or that its proposed service is not clearly superior. *P. C. White Truck Lines*, 551 F.2d at 1328–29; *Niedert Motor Service*, 583 F.2d at 959, 963. Although the Commission's decision did not rest heavily on this erroneous analysis, the application of these improper standards did affect its ruling and must be corrected.

■ The Commission did accord decisive importance to its conclusion that granting Sharron Atlanta service authority would result in destructive competition to existing carriers serving the rural areas.

However, the ICC focused entirely on the possible diversion of traffic from existing carriers and not on the advantages of competition, which it is also required to consider. *Niedert Motor Serv.*, 583 F.2d at 963; *P. C. White Truck Lines*, 551 F.2d at 1328–29. Moreover, loss of customers by a carrier is not itself a harm to the public interest. The ICC is to protect the public interest, not that of certified carriers. *Appleyard Motor Transportation Co. v. ICC*, 592 F.2d 8, 11 (1st Cir. 1979). Thus, the protestants are required to show more than an expected decline in revenues; they must show specifically *how* their overall service to the public will be jeopardized. *P. C. White Truck Lines*, 129 MCC 1, 7; *Lemon Transp. Co.*, 131 MCC 76, 80 (1979); *Latin Express Serv., Inc.*, 128 MCC 740, 746 (1978); *Smith Transp. Corp.*, 130 MCC 218, 222 (1978). The United States and Sharron contend that protestants did not make the necessary showing in this case and in fact made only the same showing that the ICC found insufficient in *P. C. White, supra.* We need not dispose of this and other contentions by Sharron, since our above determinations regarding the uneven treatment issue are dispositive and require reversal.

The briefs and the record in this case lead one to the ineluctable conclusion that the Commission's treatment of Sharron, especially in relationship to RNX, is fundamentally unjust, arbitrary and capricious. In reviewing the Commission's action, we are guided by our admonition in *Barnes Freight Line v. ICC*, 569 F.2d at 923, that "we are not to act as a Commission ourself, nor are we entitled to correct decisions we think are wrong. But neither must we hold our noses and close our eyes while the Commission rewards a wrongdoer.... The Commission's order in this case is unjust; and it is arbitrary and capricious." Since the Commission has continued its unconscionable treatment of Sharron in the face of our opinion in *Barnes*, we retain jurisdiction after remand and direct the ICC to grant Sharron a temporary authority to serve Atlanta forthwith while it reconsiders Sharron's permanent application for authority to

service the proposed routes in accordance with the principles discussed by this court.

REVERSED AND REMANDED.