REFRIGERATED TRANSPORT CO.,
INC., Petitioner,

v.

The INTERSTATE COMMERCE COM-
MISSION and United States of
America, Respondents.

No. 80–7261.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Dec. 10, 1981.

Serby & Mitchell, P. C., David I. Funk, Bruce E. Mitchell, Atlanta, Ga., for petitioner.

Harry J. Jordan, Washington, D. C., Dennis J. Starks, Charleston, W. Va., for Pitt County Transp. Co., Inc. of Farmville.

Before TJOFLAT, HATCHETT and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

Petitioner Refrigerated Transport Co., Inc. ("Refrigerated") seeks review of an Interstate Commerce Commission order granting intervenor Pitt County Transportation Co., Inc. ("Pitt") operating authority to transport "materials, supplies and equipment . . . used in the processing, packing, storing, handling, and marketing of tobacco" between points in ten southeastern states. Because the record before us lacks substantial evidence to support the grant of authority, we vacate the Commission's order and remand.

On November 17, 1978, Pitt applied to the Commission for operating authority to transport the commodities described between points in Florida, Georgia, South Carolina, North Carolina, Tennessee, Kentucky, Virginia, Maryland, West Virginia, and Ohio. The applicant offered only a statement of Philip Morris as evidence of public need for the services. After summa-

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—Oct. 14, 1980.

ry review of Pitt's application pursuant to its "modified procedure,"[1] the Commission granted the authority without restriction as to shipper, routes, points of origin or destination within the named states.[2]

Refrigerated does not have authority to transport the commodities which are the subject of this application—materials and supplies used in the production, manufacturing, and distribution of tobacco-related products—on behalf of Pitt's supporting shipper, Philip Morris USA, or on behalf of the shipping public generally. Refrigerated does have authority to transport these commodities (subject to certain minor restrictions not here relevant) on behalf of Lorillard, a division of Loews Theaters, Inc., on a radial basis between Lorillard's three facilities in Virginia, Kentucky, and North Carolina, on the one hand, and all points in the 48 contiguous states, on the other. The conflict in the authorities is apparent; Pitt may divert within its ten-state area traffic which might otherwise be served by Refrigerated.

This service is of considerable interest to Refrigerated; it is a prime source of Refrigerated's outbound traffic from these states and thus important in minimizing deadhead mileage out of this area. Moreover, Refrigerated has made substantial investments in maintaining and expanding its Lorillard-servicing facilities.

The Commission based its grant of authority on the evidence before it: Philip Morris' account of its needs.

> As one of the largest manufacturers and distributors of tobacco products, Philip Morris USA buys a tremendous quantity of tobacco each year. Tobacco is bought from all the tobacco producing states in the southeast proposed to be served by Pitt County. Typically, tobacco is purchased from farmers or public warehouses and is shipped in bales and wooden hogsheads in truckload quantities weighing 30 to 45 thousand pounds. Raw tobacco is shipped to 15–20 green prizing facilities in Kentucky and Tennessee. Raw tobacco is also shipped to extruder plants at Lumberton and Rocky Mount, NC, Danville, VA, and Greenville, TN. The extruder plants further process the tobacco for subsequent movement to our company's Richmond manufacturing plant.

> Tobacco moves at a fairly steady basis throughout the year from the company storage facilities and the extrusion plants to the Richmond manufacturing facility. Tobacco is, however, a highly seasonable crop and during the growing and harvesting seasons there is a tremendous demand for motor carrier service. The peak season runs generally between July and February. During this time Philip Morris USA needs from 250 to 300 trucks daily for the movement of raw, processed, and manufactured tobacco. Generally, one-third of the equipment would be loading, one-third in transit, and one-third unloading. There is just not enough equipment available to our company during this period. The result has been interference with marketing and production schedules. This chronic equipment shortage is one reason for supporting Pitt County's application.... Approval of this application will permit Pitt County to handle packaging materials and other materials and supplies from the extruder plants and supplier facilities in the southeast to our company's processing plants and our main facility at Richmond. By coordinating the movement of tobacco with my company's needs for materials, supplies, and equipment used in manufacturing tobacco products, Pitt County will have an operation substantially in balance, and Philip Morris USA will enjoy the benefits of a more efficient and economic service.

Record, Doc. No. 8, 4–6.

This account does not precisely define the nature of the commodities, their source and

---

1. *See* 49 C.F.R. §§ 1100.5(j), 1100.43–1100.52 (1980). Under the Commission's modified procedure, evidence and arguments are confined to written submissions; oral hearings are reserved for the resolution of disputes as to issues of material fact.

2. As noted, the authority granted was "between points in" the listed states, "over irregular routes."

final destinations.[3] The company says the commodities are to be moved between the plants and supplier facilities. "Supplier facilities" is not defined. We are told that the commodities are used in the manufacture process. Although the tobacco is grown and stored throughout the application area, product manufacture begins and ends at facilities in the four-state area of Tennessee, Kentucky, North Carolina, and Virginia.[4] Because the transportation of tobacco is exempt, only shipments of other, non-exempt, items may provide the basis for the grant of authority.[5] Nothing more than the movement of tobacco has been shown for the ten-state area. During the period of Pitts' temporary authority, all shipments were made within these four states. Philip Morris apparently only has need to move commodities between its prizing facilities, extruder plants, and manufacturing plant.[6]

The Commission, operating through an employee board to which it had delegated its function of initial review, approved Pitt's application, finding that Philip Morris' statement amounted to substantial evidence of a public need. The Commission concluded that Refrigerated's service, restricted as it was to Lorillard traffic, was unresponsive to the needs of Philip Morris and others with similar needs. In response to Refrigerated's argument that potential diversion of its Lorillard traffic would promote inefficiency and waste contrary to the

public interest, the Commission concluded, without elaboration, that "[p]rotestants have not shown that a grant of this application would adversely affect their existing operations to an extent contrary to the public interest, particularly since protestants may compete for the traffic involved." We have previously noted that Refrigerated does not have the authority to so compete. On appeal before a panel of Commissioners, the review board's determination was affirmed, one member dissenting. Commissioner Clapp would have affirmed the grant only as to the four-state area containing Philip Morris' processing facilities and in which Pitt had confined its operations under temporary authority rather than the ten-state region encompassed in the permanent authority.

■ An agency determination such as the one before us must be set aside if it is "arbitrary, capricious, . . . [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E); *Watkins Motor Lines, Inc. v. ICC*, 641 F.2d 1183, 1188 (5th Cir. 1981). Under the "arbitrary and capricious" standard the scope of review is a narrow one. A reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a

---

**3.** The "commodities used in the production and distribution of tobacco products," are nowhere specifically defined in this record. The term must include more than the baling wire and wooden hogsheads by which the raw product is packaged. We can only assume that the parties and the Commission understand what it is we are dealing with.

**4.** There is nothing in the record to suggest, for example, that the commodities covered by this authority are used in storage facilities managed by Philip Morris in other than these states, and are thus necessary to eventual processing of the tobacco itself. Subsequent proceedings may disclose such evidence.

**5.** 49 U.S.C. § 303(b)(6); 49 C.F.R. § 1047.25 (1980).

**6.** As the Commission was aware, evidence of operations under temporary authority showed that Pitt made 63 shipments between 11 points in the four-state processing region of North Carolina, Tennessee, Kentucky, and Virginia. Both sides seek to make too much before this court of operations under temporary authority. Pitt argues that the small volume of temporary authority traffic undermines Refrigerated's apprehensions about traffic diversion. Refrigerated argues that the four-state area in which temporary operations have occurred mark the outside of any permissible final authority under this application. Both arguments are properly addressed to the Commission for its consideration and resolution in the first instance. We note only that operations under temporary authority give a practical construction to the ambiguity latent in Philip Morris' statement of transportation needs.

narrow one. The court is not empowered to substitute its judgment for that of the agency." ... The agency must articulate a "rational connection between the facts found and the choice made." ... While we may not supply a reasoned basis for the agency's action that the agency itself has not given, ... we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Bowman Transportation, Inc. v. Arkansas-Best Freight Systems, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) (citations omitted). Substantial evidence, while something less than the weight of the evidence, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

■ The Commission must authorize a carrier to provide services "if the Commission finds that ... the person is fit, willing, and able ... to provide the transportation to be authorized ... and ... the transportation to be provided ... is or will be required by the present or future public convenience and necessity." 49 U.S.C. § 10922(a) (1980 pamph.).[7] Potential impairment of the operations of existing carriers contrary to the public interest is also to be considered. *Sharron Motor Lines, Inc. v. United States*, 633 F.2d 1115 (5th Cir. 1981).

■ In the case before us no issue has been raised as to Pitt's ability to perform the services it seeks authority to render. We cannot agree with Refrigerated's claim that there is no substantial evidence of the need for the authority sought—authority to transport tobacco processing supplies and materials for Philip Morris and others with similar needs. Philip Morris' statement is

more than substantial evidence of the fact that there is an unfulfilled need for the services to be rendered in the four states. There is no evidence of a need in the remaining six states.

On the other hand, the Commission's finding that granting Pitt the authority it seeks will not impair the operations of competing carriers contrary to the public interest is unsupported. The Commission apparently disregarded Refrigerated's argument that, in giving Pitt more than it needs to serve only Philip Morris, a new line of competition was opened up between Pitt and Refrigerated for Lorillard traffic. This arena of competition is not analyzed or even discussed by the Commission, who concluded, without distinguishing the Philip Morris and Lorillard markets, that no adverse effect was demonstrated. A specific basis for the conclusion must be articulated. Without more we cannot determine if competition for Lorillard business was considered or if only the Philip Morris business was examined.

There must be a rational relationship between the authority granted and the substantial evidence of public need for service for which the authority is sought. In this case we can find no direct evidence, much less substantial evidence, in the statement of the supporting shipper as to any need for the authority sought outside the four states comprising its production region. There may be such need, and there may be such evidence, but it is not disclosed in the record before us. It would be an abdication of our reviewing function not to hold the Commission to a reviewable determination on the record as to the appropriate scope of the authority for which evidence of need has been adduced.

The supporting shipper's statement, standing alone, can only provide substantial evidence of need for transportation services

---

7. *See Watkins Motor Lines, Inc. v. ICC*, 641 F.2d 1183 (5th Cir. 1981). The decision in question, that of the review board on December 12, 1979, and that of the Commission on March 25, 1980, were handed down before the effective date of the Motor Carrier Act of 1980 and after the 1978 revision of the Interstate Commerce Act. Subsequent references will be to the text of the revised Interstate Commerce Act prior to the effective date of the Motor Carrier Act of 1980 amendments.

in the region of its processing facilities, that is, North Carolina, Tennessee, Kentucky, and Virginia. With more evidence than is in the record before us a greater showing of public need might be made. Unlike the case in *Refrigerated Transport Co., Inc. v. ICC*, 616 F.2d 748 (5th Cir. 1980), where the evidence clearly showed a need only for a restricted, radial grant of authority, the evidence in this case is inadequate for us to fashion a more restricted authority. We leave a redetermination of the appropriate scope of the authority to be granted to the Commission's reconsideration on remand.

In summary, we conclude that the Commission failed adequately to articulate the basis for its finding of no adverse impact. We further find that there is insufficient evidence to support the authority as granted. Accordingly, the order of the Commission is vacated and the matter remanded for further proceedings consistent with this opinion.

VACATED and REMANDED.