**DEATON, INC., Petitioner,**

v.

**INTERSTATE COMMERCE COMMIS-
SION and the United States of
America, Respondents.**

No. 81–7828.

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1982.

Turney & Turney, Kim D. Mann, Washington, D.C., for petitioner.

Lawrence Schecker, Sidney L. Strickland, Jr., I.C.C., Robert B. Nicholson, Margaret G. Halpern, Atty., U.S. Dept. of Justice, Washington, D.C., for respondents.

Kenneth A. Olsen, Gladstone, N.J., for intervenor Clark Bros. Transp., Inc.

Before HILL and HENDERSON, Circuit Judges, and GARZA,* Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Once again, we are called upon to review an Interstate Commerce Commission (ICC) grant of authority to a trucking company. Finding the ICC's decision to be supported by substantial evidence in the record, we affirm.

The proceedings in this case began when Clark Brothers Transportation, Inc. (Clark), the intervenor on appeal, applied to the ICC for a certificate authorizing transportation of general commodities throughout a twelve-state territory. The proposed region encompassed Alabama, Arkansas, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina, Oklahoma, South Carolina, Tennessee, and Texas. Clark had previously serviced the area by leasing equipment and drivers to established carriers. Thus, the application signified Clark's effort to initiate its operation as an independent carrier. Clark sought non-radial authority, which would allow delivery within the affected area free of any restrictions to specific origin and destination points. Seven shippers endorsed the application.[1]

---

* Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. One of those shippers, Coosa Valley Budweiser Co., is not implicated in this appeal. Deaton does not challenge Clark's certificate to transport Coosa's product, malt beverages, since that part of the grant was more limited in scope.

In their certificates of support, those shippers referred to a number of different commodities they intended to transport via Clark, and, more significantly for purposes of this appeal, a variety of representative locations at which they would utilize the new service. In addition to the specific locations, several of the shippers also alleged a general need for transportation between unnamed points throughout the territorial scope of the application.[2] They also articulated their reasons for preferring Clark as an independent operator, rather than as an agent for established carriers.

In contrast, seven of those probable competitors, including the appellant Deaton, Inc. (Deaton), opposed the application by filing verified statements of protest. Deaton both challenged the sufficiency of Clark's evidence of public need and claimed that the grant would be "inconsistent with the public convenience and necessity." *See* 49 U.S.C. § 10922(b)(1). As a basis for the latter contention, Deaton cited a recent curtailment in its operations, which had allegedly resulted from new competition. Predicting that Clark could potentially divert 95% of its traffic, Deaton fears the further adverse effect on its business. Based on this evidence, the protestant generally alleged that the new authority would cause additional harm to the public. The other protestants made similar claims.

Faced with this evidence, ICC Review Board No. 1 (Review Board) granted in part the authority sought. The Board found Clark "fit, willing, and able to perform the granted service" in accordance with 49 U.S.C. § 10922(b)(1) and noted a demonstrated need for the authorized transporta-tion. The Review Board did, however, limit the grant to Clark. Rather than permit the transportation of general commodities, the Board restricted the commodity authorization, emphasizing that the evidence of shipper need did not furnish a basis for a broader grant. Additionally, the decision allowed movement of malt beverages only between Talladega County, Alabama, on the one hand and points in the twelve-state region on the other. This radial limitation reflected the more limited need of the only supporting shipper transporting that product, Coosa Valley Budweiser Company. The Board allowed shipment of the other authorized commodities on a non-radial basis. The order summarized the evidence submitted by the protestants and concluded,

[w]hile it is true that the operations authorized will be directly competitive with several of the protestants, they are established and successful carriers. If they continue to offer efficient and effective service at attractive prices, they need have little to fear from the competitive [sic] of this new entrant. Protestants have failed to demonstrate that degree of adverse impact to their operations or the public that would warrant a denial of the application.

*See* ICC decision in Docket No. MC–148965 (Sub-No. 3) *Clark Brothers Transportation, Inc.—Common Carrier* at 3–4.

Deaton, as well as several other protestants, appealed the decision to the full Interstate Commerce Commission. Division No. 1, acting as an Appellate Division, denied the appeal, stating that the Review Board's findings conformed to the evidence

---

**2.** In response to the question asking them to list representative origins and destinations of their traffic, the six pertinent shippers replied:

*Sirco Systems, Inc.:* Points in the states involved in this application.

*Gerber Products Co.:* Origins: Tarrant, Alabama. Destinations: Orlando, Dade City, and Jacksonville, Florida; Memphis, Tennessee; Tallapoosa, Georgia; Asheville, North Carolina; New Orleans, Louisiana; Henderson, Kentucky.

*Celotex:* Origins: Fairfield, Alabama; Camden, Arkansas; Jacksonville, Florida; Elizabethtown, Kentucky; Marrero, Louisiana; Goldsboro, North Carolina; Marion, South Carolina; Memphis and Paris, Tennessee; Houston and San Antonio, Texas. Destination Points: All points within the scope of this application are potential destination points as business locations shift continuously.

*U.S. Tube, Inc.:* Birmingham, Alabama to [all of the twelve states except Kentucky]

*Clow Corp.:* Between points and places in [all twelve states]

*Ceco Corp.:* We ship from Birmingham, Alabama to jobsite locations in Florida, Georgia, Louisiana, Mississippi, and Tennessee.

and the applicable law. Subsequently, Deaton filed a second administrative appeal, pursuant to 49 C.F.R. § 1100.98(c)(2)(ii), insisting that the ICC's alleged failure to follow its prior precedents constituted a "matter of general transportation importance." *See* 49 C.F.R. § 1100.98(c)(2)(ii). The ICC denied the petition. On appeal to this court, Deaton renews the objections that it pursued throughout the proceedings: (1) that the evidence does not support the broad territorial authority granted, and (2) that the ICC's treatment of its evidence opposing the grant was arbitrary and capricious. We conclude that both claims lack merit.

Deaton first cites as error the ICC's failure to limit the grant territorially to routes between the supporting shippers' plant sites. Essentially, Deaton says that the evidence did not justify a non-radial grant, according to the statutory burden imposed by 49 U.S.C. § 10922(b)(1). That provision requires a finding that the proposed authority "will serve a useful public purpose, responsive to a public demand or need." The applicant's burden can be met by evidence of need at a "representative number of points."[3] *Refrigerated Transport Co. v. ICC,* 673 F.2d 1196, 1200 (11th Cir.1982). Furthermore, we have emphatically refused to engage in a "numbers game," thereby shunning any threshold quantum of proof inflexibly required to establish a public need. 673 F.2d at 1200; *see also Refrigerated Transport Co. v. ICC,* 686 F.2d 881, 887 (11th Cir.1982). "[I]n reviewing the scope of authority granted on the basis of evidence relating to only some of the localities, 'the basic question . . . is . . .

whether an inference of similarity throughout the area embraced by . . . [applicant's] certificate could rationally be drawn from the evidence presented.'" *Refrigerated Transport Co. v. ICC,* 616 F.2d 748, 754 (5th Cir.1980), *quoting, May Trucking Co. v. United States,* 593 F.2d 1349, 1353, n. 19 (D.C.Cir.1979). Following this guide, we find sufficient evidence in the record to sustain the non-radial twelve-state grant. The shippers favoring Clark's application specifically designated a number of potential origin and destination points. Viewing this evidence together with the general allegations of intended shipment to unnamed points throughout the territory, the ICC had sufficient reason to conclude that non-radial authority was justified by the record.[4]

Similarly, the ICC's findings with respect to the protestant's allegation of anticipated harm do not warrant reversal. The statutory provision requires the ICC to deny any application if it "finds, on the basis of evidence presented by persons objecting to the issuance of a certificate, that the transportation to be authorized by the certificate is inconsistent with the public convenience and necessity." 49 U.S.C. § 10922(b)(1). In its decision, the Review Board concluded that the protestants did not make the necessary showing. Deaton challenges this finding, claiming that it is arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). Deaton basically contends that the ICC failed to disclose the standard by which it will evaluate a protestant's evidence, and that the ICC's allegedly conclusory treatment of Deaton's evidence is proof that it did not adequately consider it.

---

3. The ICC argues that the Motor Carrier Act of 1980, which somewhat relaxed the regulatory scheme, requires only "some evidence" of public need. *See* H.R.Rep. No. 96–1069, 96th Cong.2d Sess. 14 (1980), *reprinted in* 1980 U.S. Code Cong. & Ad.News 2283, 2296. While acknowledging that Congress intended the amendments to ease carrier entry, *Gamble v. ICC,* 636 F.2d 1101, 1103 (5th Cir.1981), we emphasize that our requirement of a "representative showing of public need" has survived the statutory change. *See Refrigerated Transport Co. v. ICC,* 686 F.2d 881, 888 (11th Cir. 1982).

4. Deaton's reliance on *Refrigerated Transport Co. v. ICC,* 616 F.2d 748 (5th Cir.1980), and *Refrigerated Transport Co. v. ICC,* 663 F.2d 528 (5th Cir.1981), is misplaced. In both of those cases, a complete lack of evidence of any need for part of the authority necessitated fashioning a more limited grant or remanding the application to the ICC. By discounting the supporting shippers' general allegations of need, Deaton perceives a similar situation in this case. Although the general allegations could be more precise, when coupled with the representative points listed, they provide a sufficient basis to support the grant.

Contrary to Deaton's assertion, the applicable statutes, supplemented by judicial and ICC interpretations, satisfactorily define the protestant's burden of proof. As previously noted, 49 U.S.C. § 10922(b)(1) generally defines the standard as inconsistency "with the public convenience and necessity." The statute further states that "diversion of revenue or traffic from an existing carrier" is not "of itself inconsistent with the public convenience and necessity." 49 U.S.C. § 10922(b)(2). The courts have interpreted this burden as requiring existing carriers to show a specific harm to the public interest. *E.g., Sharon Motor Lines, Inc. v. United States,* 633 F.2d 1115, 1118 (5th Cir.1981). Applying these principles, the ICC has consistently declared that proof of harm to established carriers will satisfy the standard only if it will "so damage them as to deprive the public of essential services." *Tri-State Motor Transit Co., Ext.—General Commodities,* 132 M.C.C. 504, 519 (1981). Against this background, Deaton's complaint that the ICC has not articulated the standard it applies is insupportable.

██ We also conclude that the ICC sufficiently disclosed its reason for rejecting the protestants' evidence. Of course, to survive judicial review under the arbitrary and capricious standard, an agency must explain the rationale for its decision. *E.g.,*

*Pitre Brothers Transfer, Inc. v. United States,* 580 F.2d 140, 144 (5th Cir.1978); *see also* 5 U.S.C. § 557(c)(A). Nevertheless, an agency determination is generally upheld if its basis can be discerned from the opinion. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In this light, one can easily determine the reasons why the ICC discounted Deaton's evidence. After summarizing the protestant's allegations, the ICC suggested that an efficient and competitive operation should alleviate any potential harm caused by Clark's entry. This conclusion is sustained by the evidence, which focused on projected damage to Deaton's business, and included only vague, general assertions of anticipated harm to the public. Finally, the finding conforms to the applicable statutory standard, since mere proof of "diversion of revenue or traffic" does not satisfy the burden. *See* 49 U.S.C. § 10922(b)(2).

Accordingly, the order of the ICC is AFFIRMED.