United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 26, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

02-30961
Summary Calendar

---

SEVENTY ONE FARM JOINT VENTURE; WOOD LAKE INC; SLOW BAYOU INC;
SANDY BAYOU, INC; SPRINGS INC; PORT BARRE INC; LAVEAU INC.

Plaintiffs-Appellants,

VERSUS

UNITED STATES DEPARTMENT OF AGRICULTURE,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana
(01-CV-1990)

---

Before DAVIS, DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:[1]

Plaintiffs-Appellants Seventy-One Farm Joint Venture ("the JV") and its six joint venturer participants filed suit claiming that, contrary to a final agency determination, each of the six joint venturers was eligible to receive 1997 program payments authorized by the Agricultural Market Transaction Act (AMTA), 7 U.S.C. § 7201, et seq. Defendant Anne M. Veneman, Secretary of the

---

[1] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

United States Department of Agriculture ("USDA"), is ultimately responsible for AMTA payment determinations.[2]  The case was submitted on a stipulated transcript of agency proceedings and cross-motions for summary judgment.  The district court ruled against Plaintiffs, concluding that substantial evidence supported the Secretary's decision that Plaintiffs were entitled to only one AMTA payment in 1997, not six.  After de novo review, we affirm.

I.

AMTA payments are limited to $40,000.00 per "person."  7 U.S.C. §§ 7215, 1308.  Under the payment limitation and payment eligibility regulations, a joint venture is deemed to be a "joint operation," which cannot be a "person" eligible for payments.  Each of its members or participants, however, can be a "person."  See generally 7 C.F.R. §§ 1400.3(b) (definition of "person," ¶ (1)(i)&(ii)), 1497.102.

Within the regulatory definition of "person" are certain "separate and distinct" requirements.  A joint venture may satisfy the "separate and distinct" requirements for each of its participants or members.  See 7 C.F.R. § 1400.3 (definition of "person," ¶(3)) ("With respect to an . . . entity that is a member of a joint operation, such . . . entity will have met the requirements of paragraph (2) [listed below] if the joint operation

_____

[2]  The USDA is required to offer production flexibility contracts to eligible farmers, to make annual payments in return for the farmers' agreeing to certain conservation and planting flexibility provisions.  See 7 U.S.C. § 7211 (1996).

meets the requirements . . . .").   To do so, a joint venture must establish that it:

> (1)   Has a separate and distinct interest in the land or crop involved;
>
> (2)   Exercises separate responsibility for such interest; and
>
> (3)   Maintains funds or accounts separate from that of any other individual or entity for such interest.

7 C.F.R. § 1400.3 (definition of "person," ¶(2)).

Specifically under scrutiny today is whether the JV's transactions and financial relationship with another entity, Seventy-One Farms, LLC ("the LLC"), the owner of the land farmed by the Plaintiffs, disqualified the JV from meeting the "separate and distinct" requirements.

## II.

The JV leases farm land in St. Landry Parish from the LLC for cash rent.  Don Williams ("Williams") manages the JV off premises and Terrell Savage is the farm manager on site.  The six joint venturers, each a Louisiana corporation, are owned in varying amounts by Williams, Savage, and Williams's two adult daughters. Williams also manages the LLC.  The LLC is owned by two trusts, one for each of Williams's two daughters.  Williams also resides in a house owned by the same two trusts.

The Agency determined that the members of the JV and the LLC "were combined as [one] person for 1997 payment limitation purposes," because 1) the LLC secured one of its loans with the JV's crop, and 2) the JV and LLC jointly borrowed funds using

3

property owned by the LLC's two owners (the trusts) as security.[3]

We review the district court's summary judgment decision de novo, Shell Offshore, Inc. v. Babbitt, 238 F.3d 622, 627 (5th Cir. 2001), and the final agency decision deferentially. Sierra Club v. U. S. Fish & Wildlife Service, 245 F.3d 434, 444 (5th Cir. 2001). The general standard under the Administrative Procedures Act, 5 U.S.C. §§ 701, et seq., is whether the agency's final decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A); Sierra Club, 245 F.3d at 444.

We review an agency finding to determine whether it is supported by substantial evidence. 5 U.S.C. § 706(2)(E); Refrigerated Transport Co., Inc. v. I.C.C., 663 F.2d 528, 530 (5th Cir. 1981). An agency must articulate a rational relationship between the facts found and the choice made. Sierra Club, 245 F.3d at 444; Refrigerated Transport, 663 F.2d at 531.

III.

The Agency decision was based in part on findings that the JV commingled loans and collateral with the LLC and Williams. The record contains substantial evidence to uphold an agency finding

---

[3] Plaintiffs also argue that the combination of the JV and LLC as one person was in contravention of the combination rules since the LLC does not own any part of the JV. This argument misses the mark. While the combination regulation, 7 C.F.R. § 1400.101, is dependent on percentage ownership, the "person" requirements set forth in § 1400.3, require the entity to maintain funds or accounts separate from "*any other* individual or entity," without regard to percentages of ownership.

4

that the assets and obligations of the JV were shared, by its taking out joint loans with the LLC and by the joint use of its property as collateral.[4]

The agency concluded from these findings that the JV failed to exercise "separate and distinct" responsibilities for the crops. Whether we would hold that the transactions at issue would disqualify an entity from satisfying the "separate and distinct" element in the regulations is not the standard we employ today. Enron Oil & Gas Co. v. Lujan, 978 F.2d 212, 215 (5th Cir. 1992) (agency's interpretation need not be the sole interpretation or one that a reviewing court would reach), cert. denied, 510 U.S. 813, 114 S. Ct. 59, 126 L.Ed.2d 29 (1993). We decide only whether the agency's interpretation was plainly erroneous or inconsistent with its own regulations; otherwise, the agency's construction of its own regulations is controlling. Silwany-Rodriquez v. INS, 975 F.2d 1157, 1160 (5th Cir. 1992); United Steel Workers v. Schuylkill Metals Corp., 828 F.2d 314, 319 (5th Cir. 1987). We review to determine whether the agency considered the relevant factors or

_____

[4] The JV obtained financing for its 1997 crop from two loans secured by the 1997 crops, with a collateral mortgage note made by the LLC and collateral mortgage on land owned by the LLC and as additional security for one of the two loans. The same collateral was used to secure loans to the LLC during 1997.

In addition, the JV and LLC took two loans jointly in 1997: one secured by the JV's crops, with proceeds payable to the LLC; the other secured by the residence and lot owned by the two trusts, the proceeds of which were payable to both the JV and the LLC. The record also provides testimony that in the farming business the land owner and tenant do not usually jointly borrow money and use the crop of the tenant as collateral for such a loan.

5

made a clear error in judgment in reaching its decision.  <u>State of</u> <u>Louisiana v. Verity</u>, 853 F.2d 322, 327 (5th Cir. 1988).

Under this deferential standard we easily conclude that the Agency did not clearly err in determining that the JV, by participating in the transactions noted, did not retain a "separate and distinct" interest in its crops.  Accordingly, we uphold the Agency determination that the JV failed to meet the payment eligibility requirements for each of its six members in 1997.

CONCLUSION

Because the Agency decision is supported by substantial evidence and does not represent a clear error of judgment, the district court opinion upholding that determination is

AFFIRMED.