[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 21, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11571

_____

DOA No. 02-0001-HPA

CHRISTOPHER JEROME ZAHND,

Petitioner,

versus

SECRETARY OF THE DEPARTMENT OF AGRICULTURE,

Respondent.

_____

Petition for Review of a Decision of the
Department of Agriculture

_____

**(February 21, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and NANGLE,[*] District Judge.

PRYOR, Circuit Judge:

This petition for review of an order of the Secretary of the United States

_____

[*] Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

Department of Agriculture presents the following issue: whether substantial evidence supports the decision of a Judicial Officer for the Department of Agriculture that Lady Ebony's Ace, a four-year-old Tennessee Walking Horse, was sore within the meaning of the Horse Protection Act, 15 U.S.C. §§ 1821-1831, when she was entered in a horse show in Shelbyville, Tennessee, on May 25, 2000. After two veterinarians for the Department of Agriculture inspected Lady Ebony's Ace at the show, a ticket was issued charging Christopher Jerome Zahnd, the horse's trainer, and Ronald Beltz, the horse's owner, with violating the Horse Protection Act by entering a sore horse. Following a hearing, an Administrative Law Judge dismissed the complaint because he found that Zahnd had rebutted the statutory presumption of violation, but a Judicial Officer reversed. The Judicial Officer relied on the expert testimony of a veterinarian who examined the horse. After thorough review of the record, we affirm.

## I. BACKGROUND

On the morning of May 25, 2000, Zahnd loaded Lady Ebony's Ace into a horse trailer at his stable in Trinity, Alabama. Zahnd then drove to the 30th Annual Spring Fun Show Preview "S.H.O.W. Your Horses" in Shelbyville, Tennessee. Lady Ebony's Ace spent the greater part of the day in the trailer because, in addition to driving time, Zahnd stopped for several hours at a horse sale and a stall had not been procured for the use of Lady Ebony's Ace before the show.

2

When Lady Ebony's Ace was unloaded from the trailer, shortly before her pre-show inspection, she had been in the horse trailer for eleven to twelve hours. After she was unloaded, Lady Ebony's Ace was examined by Zahnd and Larry Joe Appleton Jr., who was acting as Zahnd's groom for the night. Neither Zahnd nor Appleton observed any abnormal responses from the mare.

Lady Ebony's Ace was then examined by Charles Thomas, the Designated Qualified Person hired by the Spring Fun Show to ensure compliance with the Horse Protection Act, and two veterinarians for the Department of Agriculture, Drs. Clement Dussault and John Guedron. The purpose of that examination is to determine whether the horse is sore, that is, whether a horse has been abused with chemical or mechanical devices and will feel pain when moving. The typical examination takes a minute to a minute and 15 seconds and involves two stages. First, the horse is observed as it walks around a cone. Second, the feet and legs of the horse are palpated with thumb pressure.

Thomas examined Lady Ebony's Ace twice. After his examination, Thomas disqualified her from showing that night. Thomas noted that Lady Ebony's Ace reacted to palpation on both front feet and walked slowly with a slight pull on the reins when led. Thomas noted a mild reaction on the left front foot outside and a stronger reaction on the right front foot outside. Thomas did not find a violation of the Horse Protection Act.

Lady Ebony's Ace was then examined by Dr. Dussault. Dr. Dussault observed that Lady Ebony's Ace moved "somewhat freely" as she moved around the cone. On palpation, Dr. Dussault observed that Lady Ebony's Ace withdrew her foot when he palpated the medial and lateral aspects of both the left and right front pasterns. Dr. Dussault described the reaction as moderate. Based on his observations, Dr. Dussault requested that Dr. Guedron examine Lady Ebony's Ace.

During his examination, Dr. Guedron observed that, as she walked around the cone, Lady Ebony's Ace walked slowly "with a shortened gait and was reluctant to lead." On physical examination, Dr. Guedron observed "strong, consistent and repeatable pain responses . . . to digital palpation of both the medial and lateral heel bulbs" of the left foot. On the right foot, Dr. Guedron also observed "strong, consistent and repeatable pain responses to digital palpation of the same areas of the pastern as described for the left foot."

After their examinations, Dr. Dussault and Dr. Guedron conferred and agreed that Lady Ebony's Ace was sore as defined by the Horse Protection Act. In separate affidavits, both doctors gave their opinion that the horse had been sored by use of chemical or mechanical means. Zahnd and Beltz were each issued tickets that alleged violations of the Horse Protection Act.

On October 25, 2001, the Acting Administrator of the Animal and Plant Health Inspection Service of the Department of Agriculture filed a complaint

4

against Beltz and Zahnd and alleged that Lady Ebony's Ace had been entered in the show in Shelbyville for the purpose of showing while she was sore. A hearing was scheduled for June 3, 2004. Because Dr. Guedron was unavailable to testify on that date, the hearing was rescheduled to December 1, 2004. Before the rescheduled hearing, the complaint against Beltz was settled, which left Zahnd as the only respondent.

At the hearing, the Secretary offered the testimony of Dr. Dussault and eight exhibits, which consisted of the affidavits of Thomas, Dr. Dussault, Dr. Guedron, and Zahnd, the DQP ticket and examination sheet, the violation ticket issued by the Department, and a video of the examination proceedings. Zahnd and Appleton testified for Zahnd. Dr. Guedron did not testify.

Dr. Dussault testified that, during an examination, he looks for odors, scarring, or evidence of other artificial substances on a horse's leg. With regard to palpation, Dr. Dussault looks for a repeated response such as withdrawal of the foot as a sign of pain. Dr. Dussault testified that the pressure typically applied during palpation is enough to blanch the thumbnail. Dr. Dussault testified that palpation alone would not cause a horse to feel pain or move but jabbing a horse could make it move.

With regard to his examination of Lady Ebony's Ace, Dr. Dussault testified that, when he palpated the lateral part of the horse's pastern, she withdrew her foot,

5

which is a sign of pain. Dr. Dussault did not observe any smells or scarring on Lady Ebony's Ace and did not recall any hair loss. On cross-examination, Dr. Dussault agreed that increased reactions to multiple palpations could be a sign either that the horse was feeling more pain or that the horse was irritated. Dr. Dussault also agreed that a horse that had been in a trailer all day could be more aggravated than a horse that had been in a stall, but opined that he did not believe Lady Ebony's Ace was aggravated because she only responded when palpated on the lateral part of her pastern.

Appleton testified first for Zahnd. Appleton testified that Lady Ebony's Ace had spent eleven to twelve hours in a trailer on the day of the show and that the trailer was "pretty unstable" when moving. With regard to his examination of Lady Ebony's Ace before the inspection by the Designated Qualified Person. Appleton testified that he did not observe any reactions. Appleton testified that a horse will become more irritated with repeated mashing of its foot and that, depending on the manner of mashing, an examiner can obtain a different reaction from a horse. Appleton also observed that, at least once during the examinations of Lady Ebony's Ace, another horse walked directly behind her. According to Appleton, most of the time a horse will move if another horse walks behind it during inspection. Appleton admitted, on cross-examination, that he was not a veterinarian.

6

Zahnd then testified on his own behalf. Zahnd testified that his occupation was training Tennessee Walking Horses and that he had been in that field for fifteen years. Zahnd testified that he showed Lady Ebony's Ace eight to ten times a month from March to November 2000. The instant citation was the only one Zahnd had ever received. Zahnd testified that, on the night of the Spring Fun Show, both he and Appleton examined Lady Ebony's Ace before the official inspection and he did not observe any response to palpation during either examination. Zahnd testified that the kind of pressure used on a horse could affect the strength of the reaction. Zahnd also testified that Lady Ebony's Ace was a "little bit stubborn and hateful thing" and that if her routine was changed she could become irritated. Zahnd observed that, during one of the examinations, Lady Ebony's Ace was resting her back foot in a position that a horse will not take if it is sore. Zahnd testified that he did not know during which inspection the horse rested her back foot. In addition, Zahnd testified that if you poke on a horse's foot enough times eventually she will move. Zahnd testified that, in his experience, hair loss or scarring is apparent on 90 percent of sored horses. On cross-examination, Zahnd admitted that he was not a veterinarian and a veterinarian should know more, "without a doubt," about whether a horse is sore.

After consideration of the evidence, the Administrative Law Judge dismissed the complaint. The Administrative Law Judge concluded that the

7

Secretary had established the statutory presumption that Lady Ebony's Ace was sore, 15 U.S.C. § 1825(d)(5), but Zahnd had rebutted the statutory presumption. The Administrative Law Judge concluded that Zahnd had rebutted the presumption of soreness with evidence that the reactions of Lady Ebony's Ace could be attributed to multiple factors, including her temper and her long day spent in a trailer. The Administrative Law Judge was also influenced in his decision by the lack of any physical indicia of soring; the failure of Dr. Guedron to testify, specifically with regard to his manner of palpation; the lack of any rebuttal evidence to contradict Zahnd's explanations for the mare's behavior; and Zhand's unblemished record of compliance with the Horse Protection Act.

On appeal, the Judicial Officer reversed the Administrative Law Judge. After making independent findings of fact, the Judicial Officer summarily concluded that Zahnd's evidence was not sufficient to rebut the statutory presumption and did not outweigh the evidence that Lady Ebony's Ace was sore. The Judicial Officer then addressed the conclusions of the Administrative Law Judge and his disagreements with those conclusions. The Judicial Officer found that the failure of Dr. Guedron to testify was not a detriment to the Secretary's case because the pressure used by Dr. Guedron in palpating Lady Ebony's Ace was irrelevant. With regard to the absence of scarring, chemical odor, and hair loss, the Judicial Officer found that, according to the policy of the Secretary of Agriculture,

8

digital palpation alone is a highly reliable method of determining whether a horse is sore. Based on his "personal experience with Horse Protection Act cases," the Judicial Officer disagreed with the conclusion of the Administrative Law Judge that "scarring, chemical odor, and hair loss are the three most common indicia of the use of mechanical or chemical soring devices" and noted that Dr. Dussault testified that soreness was possible without odor or hair loss. The Judicial Officer rejected Zahnd's explanations for the reactions of Lady Ebony's Ace because he concluded that Lady Ebony's Ace was not a "silly" horse, that is, a horse that moves no matter where it is touched. The Judicial Officer reviewed a videotape of the examinations by Thomas, Dussault, and Guedron to support his finding. Finally, the Judicial Officer found that Zahnd's record of compliance was irrelevant to the question whether Lady Ebony's Ace was sored. The Judicial Officer did not otherwise explain his conclusion that Lady Ebony's Ace was proven sore and that Zahnd did not rebut the presumption. The Judicial Officer imposed a fine of $2200 and disqualified Zahnd from showing or exhibiting for one year.

## II. STANDARD OF REVIEW

We review the findings of the Secretary to determine whether they are supported by substantial evidence. 15 U.S.C. § 1825(b)(2). "Substantial evidence is: 'something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Thornton v. U.S. Dep't of Agric., 715 F.2d 1508, 1510 (11th Cir. 1983) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 1026 (1966)).  To support the findings of the Secretary, substantial evidence must be found on the record as a whole.  See Giles Lowery Stockyards, Inc. v. Dep't of Agric., 565 F.2d 321, 326 (5th Cir. 1977).

## III.  DISCUSSION

To resolve this petition, we address two matters.  First, we address the nature of the alleged violation of the Horse Protection Act, 15 U.S.C. §§ 1821-1831, at issue in this proceeding.  Second, we address whether substantial evidence supports the decision of the Judicial Officer that Zahnd did not rebut the statutory presumption.

### A.  The Alleged Violation of the Horse Protection Act

The Horse Protection Act makes it illegal for any individual to enter "for the purpose of showing or exhibiting in any horse show or horse exhibition, any horse which is sore." 15 U.S.C. § 1824(2)(B).  As used by the statute, soring means the application of devices or chemicals to the forelimbs of a horse to achieve the distinctive high-stepping gait of the Tennessee Walking Horse.  Soring causes intense pain to the horse and gives the horse trainer an unfair advantage in

competition by artificially inducing the distinctive gait.

Under the Act, a horse is sore only if the soreness is the result of one of several artificial means.

(A) an irritating or blistering agent has been applied, internally or externally, by a person to any limb of a horse,

(B) any burn, cut, or laceration has been inflicted by a person on any limb of a horse,

(C) any tack, nail, screw, or chemical agent has been injected by a person into or used by a person on any limb of a horse, or

(D) any other substance or device has been used by a person on any limb of a horse or a person has engaged in a practice involving a horse,

and, as a result of such application, infliction, injection, use, or practice, such horse suffers, or can reasonably be expected to suffer, physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving, except that such term does not include such an application, infliction, injection, use, or practice in connection with the therapeutic treatment of a horse by or under the supervision of a person licensed to practice veterinary medicine in the State in which such treatment was given.

Id. § 1821(3).  A horse is presumed to be sore "if it manifests abnormal sensitivity or inflammation in both of its forelimbs or both of its hindlimbs."  Id. § 1825(d)(5).

With respect to Lady Ebony's Ace, there is no dispute that the statutory presumption of soreness was triggered.  The Designated Qualified Person and two veterinarians for the Department of Agriculture palpated Lady Ebony's Ace and observed abnormal sensitivity in both of her forelimbs.  "Nevertheless, it is well

11

settled that the presumption of soreness is rebuttable. While it imposes on the party against whom it is directed the burden of producing evidence to me[e]t or rebut the presumption, the burden of proof remains with the [Complainant] and never shifts to the Respondent." In re Martin, 53 Agric. Dec. 212, 223 (Mar. 16, 1994) (brackets in original).

*B. The Decision of the Judicial Officer that Zahnd Did Not Rebut the Statutory Presumption of Soreness Is Supported by Substantial Evidence.*

Whether we can meaningfully review the decision of the Judicial Officer that Zahnd failed to rebut the statutory presumption of soreness is a close question. The Administrative Law Judge found that Zahnd rebutted the presumption, but the Judicial Officer disagreed. Because the Judicial Officer is not bound by the decision of the Administrative Law Judge and can draw independent inferences, we review only the decision of the Judicial Officer for substantial evidence. See Universal Camera, 340 U.S. at 496, 71 S. Ct. at 469. Our decision is made difficult because, although the Judicial Officer expressed his disagreement with the decision of the Administrative Law Judge, the Judicial Officer did not offer any reasoning for his decision that Zahnd did not rebut the statutory presumption. The Judicial Officer failed to address at least some of Zahnd's evidence and explain why that evidence did not rebut the presumption.

At the hearing, Zahnd presented a few explanations to rebut the presumption

12

that Lady Ebony's Ace was sore. Zahnd's evidence was that Lady Ebony's Ace was an irritable horse: she had been subject to the irritation of a day in a horse trailer; she had been subject to multiple palpations; the manner of palpation can affect whether a horse moves; and an irritated horse could exhibit greater reactions than a non-irritated horse. Zahnd also presented two other possible causes for some of the movements of Lady Ebony's Ace: first, Appleton testified that the movement of another horse behind a horse being examined ordinarily will make the latter horse move; and second, Zahnd observed that Lady Ebony's Ace stood resting a back foot during an examination, which was, in Zahnd's lay experience, a position a horse does not take when it is sore. Both Appleton and Zahnd apparently were credible witnesses.

The only response of the Judicial Officer to this evidence was that the record did not support the finding that Lady Ebony's Ace was a "silly" horse. Although the record supports that finding, the suggestion that Lady Ebony's Ace was acting "silly" was not the sole explanation for her behavior offered by Zahnd. The term "silly" was used to refer to the horse's irritability. In an affidavit procured by an investigator for the Department of Agriculture, Zahnd stated that the horse "was stirred up, because she acted silly during the whole time she was being checked." The Administrative Law Judge described Zahnd's explanation for the horse's behavior as "due to the horse acting 'silly' as a result of spending most of the day

13

in a horse trailer, and as a result of the extended examination process." Although both Appleton and Zahnd provided other testimony such that Lady Ebony's Ace moved when a horse walked behind her and that a horse will not rest a foot when it is sore, the Judicial Officer did not explain his rejection of these explanations.

Nevertheless, under our highly deferential standard of review, we conclude that the rejection by the Judicial Officer of the explanation that Lady Ebony's Ace was "silly" was intended to encompass Zahnd's explanation that the mare was aggravated or irritated, and substantial evidence supports that finding. As we have noted in our review of agency decisions under the "arbitrary, capricious, . . . (or) unsupported by substantial evidence" standard, "'[t]he agency must articulate a rational connection between the facts found and the choice made. . . . While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" Refrigerated Transp. Co., Inc. v. I.C.C., 663 F.2d 528, 531 (5th Cir. 1981) (quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285-86, 95 S. Ct. 438, 442 (1974)). Although Zahnd and Appleton provided testimony that the reactions of Lady Ebony's Ace could be attributed to her irritable temper and multiple irritations, Dr. Dussault testified that Lady Ebony's Ace was not acting aggravated or irritated when she was palpated. The Judicial Officer was entitled to rely on Dussault's testimony and an

14

independent review of the videotape of the examinations by Thomas, Dussault, and Guedron to reject the explanation given by Zahnd.

The only remaining evidence offered by Zahnd to refute the presumption was Appleton's testimony that the movement of one horse behind another <u>could</u> cause the latter horse to move, and Zahnd's testimony that, in <u>his</u> experience, a horse would not rest its foot when it is sore. Neither statement is sufficient for us to conclude that the decision of the Judicial Officer is not supported by substantial evidence. The Judicial Officer was entitled to rely on both his review of the videotape of the examinations and the expert testimony of a veterinarian who performed a reliable examination of the horse rather than the vague and speculative testimony of two lay witnesses.

## IV. CONCLUSION

The petition for review is **DENIED.**