**STAR DELIVERY & TRANSFER,**
**Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Respondents.**

**No. 80–2401.**

United States Court of Appeals,
Seventh Circuit.

Argued April 14, 1981.

Decided Sept. 14, 1981.

James C. Hardman, Chicago, Ill., for petitioner.

Colleen J. Bombardier, Atty. Gen., Counsel, I.C.C., Dept. Justice, I.C.C., Washington, D. C., for respondents.

Before BAUER, Circuit Judge, PECK,* Senior Circuit Judge, and CUDAHY, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Tennant Truck Lines, Inc. applied to the Interstate Commerce Commission (ICC) for a certificate of public convenience and necessity that would grant Tennant permanent authority to act as a common carrier between facilities of the International Harvester Company in Illinois and points in Indiana and Iowa. Tennant's application was referred to Review Board Number 3 of the ICC and was processed under a "modified procedure" that permitted those opposing and supporting the application to do so by affidavit. 49 C.F.R. 1100.43–1100.52.

Tennant's application was supported by Harvester. Harvester's affidavit detailed reasons that Harvester expected its demand for motor carrier service to increase in the future. Furthermore, Harvester stated that its past demands for motor carrier service had exceeded the capabilities of existing carriers "in many instances." In support of this contention, Harvester supplied documents intended to illustrate Harvester's annually recurring problems in obtaining adequate transportation as a result of

* Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

"agricultural seasonal peaks, resumed production after strikes, and similar circumstances." Harvester concluded that its support of Tennant's application, as well as its support of the similar applications of various other carriers, was not intended or expected to divert traffic from existing carriers, but was solely to provide Harvester with flexibility and efficiency in the use of motor carrier services.

Tennant's application was opposed by Star Delivery & Transfer, Inc., a common carrier with existing authority to transport Harvester's goods over the routes covered by Tennant's application. Star's affidavit asserted that Star had the capability and willingness to serve Harvester's present needs, and that Harvester had never fully utilized Star's full capacity to serve the Indiana and Iowa destinations. Star further stated that the specific instances cited by Harvester of Star's inability to move Harvester's shipments occurred under highly unusual circumstances involving record snowfall and a strike that had disrupted shipments. Star asserted that there was no necessity for additional permanent authority to service Harvester's needs, and that a grant of such authority would endanger Star's ability to continue its operations by diverting business from Star.

The ICC's Review Board issued a decision dated May 12, 1980, that granted Tennant's application. That decision first recited the "pertinent facts" alleged in Harvester's and Star's affidavits, and then stated:

We conclude that the public convenience and necessity require the proposed operations. Because of the lack of sufficient available equipment, the supporting shipper has shown a need for applicant's service in addition to that available from protestant and other existing carriers.

The decision then noted Star's evidence of the potential for harm to Star by diversion of traffic and stated that this evidence failed to show that Star's operations would be jeopardized by the grant of authority to Tennant. Finally, the decision announced the Review Board's conclusion that:

We believe the addition of applicant's service will provide a positive competitive force and help alleviate recurring equipment shortage problems. The grant of authority will not materially impair protestant's operations. We conclude that the benefits to the supporting shipper and the public from having applicant's service available far outweigh any detriment, real or potential, that may befall protestant as a result of the authority granted here.

Based on these conclusions, the Review Board ordered Tennant's application be granted. Star's petition for administrative review of that order was denied, and the Review Board's decision became the final order of the ICC. Star has petitioned this Court, pursuant to 28 U.S.C. §§ 2321 & 2341 et seq., for review of the ICC decision. On review, Star challenges the ICC decision on the grounds that it was arbitrary and that it is unsupported by substantial evidence. Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (E).

Our review to determine whether the ICC's findings are supported by substantial evidence is made difficult by the cursory nature of the Review Board's decision. That decision provides so little indication of the evidence relied on by the Board as the bases for its fact-finding that the decision comes perilously close to being unreviewable. *See, Argo-Collier Truck Lines Corp. v. United States*, 611 F.2d 149, 152 (6th Cir. 1979). At a minimum, the ICC must articulate its findings on the factual issues forming the bases of its decisions. *Id.* It is not enough that the ICC merely recite the ultimate conclusions of fact mandated by statute as prerequisites for the ICC to issue certificates of convenience and necessity. The Commission's decisions must also apprise a party "of the factual material on which the agency relies for decision so that he may rebut it." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 288 n.4, 95 S.Ct. 438, 443 n.4, 42 L.Ed.2d 447 (1974).

In the present case, the Review Board made the findings of ultimate facts re-

quired by 49 U.S.C. § 10922(a)(1) & (2) as the bases for the grant of the certificate sought by Tennant (that is, that Tennant was fit, willing, and able to provide the service described by the applicant, and that the present and future public convenience and necessity required that service). In a nearly cryptic manner, the Board also made fact findings on which these ultimate facts are based. The Board found that there was a recurring shortage of equipment available for Harvester's needs, that Star had not shown that granting the application would harm Star, and that granting authority to Tennant would provide a positive competitive force. There is no dispute in this case that these findings, if supported by substantial evidence, provide a rational basis for the conclusion that public convenience and necessity required the grant of authority.

■ Star challenges the finding of a shortage of available equipment as unsupported by substantial evidence. In announcing its findings of fact, the Board's decision failed utterly to explain how it determined, in the face of conflicting evidence, that there existed a shortage of available equipment. Certainly, as the finder of fact, the Board was required to weigh the conflicting information and determine whether a shortage existed. Ideally, in order to facilitate a meaningful review of that determination by this Court, the Board would have provided some explanation for its resolution of the conflicting evidence. Without that explanation, this Court's review under the substantial evidence standard becomes a search of the record for evidence which, in the Court's opinion, would support the finding made by the Board rather than an evaluation of the evidence actually relied on by the Board in deciding that a shortage existed.

■ Having noted the ICC's failure to explain how it determined that a shortage existed, we nonetheless believe that no purpose would be served in the present case by a remand to the ICC for such an explanation. The validity of the ICC's decision does not turn solely on the finding that

existing services were inadequate. That finding is but one factor that the ICC may consider in determining whether a grant of additional authority was required by public convenience and necessity. A certificate may be granted even though no specific findings of inadequacy of existing service are made. *United States v. Dixie Highway Express, Inc.*, 389 U.S. 409, 411, 88 S.Ct. 539, 540, 19 L.Ed.2d 639 (1967); *Chem-Haulers, Inc. v. United States*, 536 F.2d 610, 623 (5th Cir. 1976). Furthermore, our review of the record shows that the factual assertions regarding the existence of a shortage of equipment are brief, direct, and nontechnical. It is therefore likely that our "search" of the evidence in this case leads us to consider the same evidence considered by the Board, and the possibility that this Court will substitute its estimation of what facts are relevant for the Board's is minimal. We conclude that even in view of Star's conflicting evidence, reasonable minds confronted with Harvester's evidence of recurring transportation problems could conclude that a shortage of equipment existed. Therefore, the Board's finding on his issue was supported by substantial evidence.

Star also asserts that the grant of two-way authority to Tennant was not supported by evidence of an inadequacy of existing "inbound" service to Harvester's Illinois facilities. In actuality, the ICC decision made no finding concerning the adequacy of existing inbound services. Furthermore, no findings regarding adequacy of present service are required in order for the ICC to make the ultimate finding that public convenience and necessity require additional service. *Id.* Since the ICC did not make the finding here challenged by Star and was not required to do so, Star's argument regarding the evidence of inbound service is nothing more than the tilting at a windmill.

In its final challenge to the ICC's fact finding, Star contends that the finding that additional authority would provide a "positive competitive force" is not supported by substantial evidence. Star argues that the

ICC overlooked evidence that a grant of additional authority would ultimately result in harm to Star's ability to compete, and that the finding that additional authority would be a positive competitive force is based solely on the ICC's abstract belief that competition is always positively served by adding more competitors. As evidence that additional authority would be injurious to Star and therefore not a "positive force", Star offered in its affidavit statements that its own operations were geared to meet Harvester's needs, that it was willing to handle more Harvester traffic than it was currently being given, and that Star's observation from past experience in other cases was that a grant of authority to a competitor resulted in diversion of traffic from Star.

Even in the face of Star's assertions of potential harm to Star, the ICC's finding that available equipment was inadequate was evidence from which reasonable minds could easily conclude that the grant of additional authority would be a positive competitive force. So long as Harvester experienced recurring shortages of available equipment, reasonable minds could decide that Harvester and its customers would benefit from the availability of additional equipment that would result from a grant of authority to Tennant. The existence of this additional competitor could cause existing carriers to be more responsive to Harvester's needs or run the risk of losing business. While the risk of such loss would be unpleasant for existing competitors, that risk is precisely the reason that the grant of authority is a competitive force likely to benefit the public.

■ Star contends that the ICC's decision was arbitrary because the ICC ignored Star's evidence of the potential harm to Star should Tennant's application be granted. A reading of the record and the Review Board's decision shows that the Board clearly weighed the competing interests involved and determined that Star had failed to show that the grant of authority to Tennant would materially harm Star. After Tennant's showing of the lack of sufficient

available service had made a prima facie case that the grant of authority was in the public interest, the burden of showing the harm that would result from the grant fell to the protestant, Star. *Assure Competitive Transportation, Inc. v. United States*, 629 F.2d 467, 479 (7th Cir. 1980). Not only was Star's proffered evidence that Star would be harmed inadequate to support a finding of such harm, but Star also offered no proof that the imagined harm reflected a corresponding injury to the public. That connection was necessary for Star to sustain its burden of showing that the additional authority should not be granted. *Id.* Under these circumstances the ICC's handling of Star's evidence of harm resulting from the grant of authority was not arbitrary.

■ Star's remaining contention is that the ICC acted arbitrarily in failing to require that Tennant show the "operational feasibility" of the proposed service. This argument is conditioned on the view that "operational feasibility" must be demonstrated as a prerequisite to a grant of operating authority. Star contends that the ICC's Operational Feasibility Policy Statement, 38 Fed.Reg. 32856 (1973) had been applied by the ICC in the past to impose such a requirement, and that the unexplained failure to impose that requirement on Tennant's application was arbitrary.

The ICC contends that a showing of operational feasibility was never a prerequisite for grants of operating authority. Rather, the ICC argues that feasibility statements were always intended only as additional information to assist the ICC in determining whether the authority sought is in the public interest.

Any confusion occasioned by prior use of operational feasibility statements in the consideration of applications for operating authority has been removed by the ICC's adoption of Rules Governing Applications for Operating Authority, 45 Fed.Reg. 86771, 86780 (1980), stating:

> We conclude that applicant may present such evidence [of operational feasibility] in its application, but that this is not

required, and to this extent we overrule the policy statement.

Whether or not the ICC should have considered the operational feasibility statement contained in Tennant's affidavit under the rules then applicable is now a moot question. No purpose would now be served by a remand of the instant case. Since no finding of operational feasibility is now required, the ICC could be expected merely to affirm its prior decision without reconsideration. Alternatively, we observe that Tennant's supporting affidavit contained sufficient evidence of the operational feasibility of the proposed service to support the ICC's more general finding that Tennant was "able" to perform the proposed service.

For the reasons stated above, the decision of the Interstate Commerce Commission is AFFIRMED.