738 F.2d 481
 238 U.S.App.D.C. 87
 CROSS-SOUND FERRY SERVICES, INC., Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Bridgeport & Port Jefferson Steamboat Company, Intervenor.
 No. 83-2155.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 18, 1984.
Decided July 6, 1984.
 
 Petition for Review of an Order of the Interstate Commerce commission.
 Eugene D. Gulland, Washington, D.C., with whom Roger S. Greene, Washington, D.C., was on the brief, for petitioner.
 John J. McCarthy, Jr., Atty. I.C.C., Washington, D.C., with whom John Broadley, Gen. Counsel, and Henri F. Rush, Associate Gen. Counsel, I.C.C., J. Paul McGrath, Asst. Atty. Gen. and Barry Grossman and Robert J. Wiggers, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.
 David H. Baker, Washington, D.C., for intervenor.
 Before WRIGHT and SCALIA, Circuit Judges, and HAYNSWORTH,* Senior Circuit Judge.
 Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 Petitioner Cross-Sound Ferry Services challenges a decision of the Interstate Commerce Commission to grant to Bridgeport & Port Jefferson Steamboat Company (B & PJ) water common carrier authority to serve all ports and points in Suffolk County, New York, and all ports and points in Connecticut. In essence Cross-Sound contests the Commission's finding that B & PJ's proposed service "is or will be required by the present or future public convenience and necessity." 49 U.S.C.A. Sec. 10922(a)(2) (West Supp.1984). Cross-Sound argues that the administrative record before the Commission was so impoverished of fact that it could not reasonably support this finding and that the Commission's refusal to permit discovery to ferret out material facts was arbitrary and capricious under these circumstances. We agree that the Commission's decisional process in this case does not comport with the reasoned decision-making requirements of Section 10 of the Administrative Procedure Act, 5 U.S.C. Sec. 706 (1982), and we therefore vacate the Commission's grant of authority to B & PJ.
 
 I. BACKGROUND
 
 2
 Cross-Sound and B & PJ both provide ferry service across Long Island Sound between Connecticut and Long Island. Under prior ICC certificates B & PJ has authority to provide service between Bridgeport, Connecticut and Port Jefferson, New York, and Cross-Sound has authority to provide service between New London, Connecticut and Orient Point, New York. B & PJ provides daily scheduled ferry service eight months of the year and Cross-Sound provides year-round daily scheduled service.
 
 
 3
 On February 16, 1983 B & PJ applied to the Commission for a certificate authorizing B & PJ's "service as a common carrier * * * of passengers and general commodities between points in Suffolk County, NY, on the one hand, and, on the other, points in Connecticut." Verified Statement of Frederick A. Hall, Appendix III to Application of B & PJ for Water Carrier Certificate, Joint Appendix (JA) 17 (emphasis in original). This blanket application comprised a request for authority to provide irregular excursion service as well as regular scheduled passenger service. The application was accompanied by seven affidavits from tour bus operators who claimed a need for excursion service in order to facilitate occasional bus excursion trips. See Appendices to Application of B & PJ for Water Carrier Certificate, JA 20-40. B & PJ presented no other evidence showing a need for its proposed service. Nor did B & PJ provide a particularized statement of the ports or routes it intended to serve.
 
 
 4
 The statutory provision governing grants of water carrier certificates requires the Commission to find that the carrier requesting authority is "fit, willing, and able" and that "the transportation to be provided under the certificate is or will be required by the present or future public convenience and necessity." 49 U.S.C.A. Sec. 10922(a). The statute also requires that "[e]ach certificate issued to a person to provide transportation as a water common carrier shall specify each route over which, and each port between which, the carrier may provide transportation." Id. Sec. 10922(f). Petitioner Cross-Sound intervened before the Commission to seek dismissal or denial of B & PJ's application on the ground that it provided insufficient information for the Commission to make the statutorily required findings.
 
 
 5
 Cross-Sound raised two particular challenges. First, the vagueness of B & PJ's request for authority and the paucity of supporting data precluded the Commission from making an informed decision as to whether the proposed service is required by "the public convenience and necessity." Id. Sec. 10922(a)(2). Second, B & PJ's failure to specify routes and ports to be served prevented the Commission from meeting its statutory obligation to name in the certificate all routes and ports to be served. See id. Sec. 10922(f). The lack of specificity in B & PJ's application prompted Cross-Sound to propose--as an alternative to dismissal or denial of B & PJ's application--discovery or an oral hearing to ferret out facts material to the statutory criteria of Section 10922. According to Cross-Sound, only if more information were elicited could it be reasonably determined whether any need existed for the proposed service, and whether the proposed service would adversely affect existing service in a way inimical to the public interest. As to the latter, Cross-Sound contended that B & PJ's proposed service might "skim" some of Cross-Sound's highly profitable summer service and thus injure the public interest by jeopardizing Cross-Sound's unique but financially tenuous winter service. See Protest of Cross-Sound Ferry Services, Inc., April 25, 1983, JA 42.
 
 
 6
 A Commission Review Board rendered the initial ruling on B & PJ's application and Cross-Sound's protest. The Board denied Cross-Sound's request for discovery or an oral hearing on the ground that "there exists in the present record sufficient information upon which to evaluate the application and make a determination as to whether the authority sought should be granted." Interstate Commerce Commission Decision No. W-271 (Sub No. 4) (Review Board Decision), July 12, 1983, at 2, JA 150. On the record as it stood the Board made a partial grant of authority. Finding in the seven affidavits from tour operators sufficient evidence of public need for excursion ferry service, the Board decided "that the public convenience and necessity require applicant's operations * * * in one way and round-trip excursion cruises, between ports and points in Suffolk County, NY, on the one hand, and, on the other, ports and points in Connecticut." Id. at 6, JA 154. The Board, however, explicitly delimited the grant of authority to such excursion service: "since no need has been shown for either a scheduled service or for the transportation of general commodities, our grant will authorize * * * excursion cruises." Id. (emphasis added). Granting excursion authority to B & PJ, the Board recognized but rejected Cross-Sound's claim that such service might be inimical to the public interest; labelling Cross-Sound's objections "speculative," the Board concluded that "the benefits to the traveling public from the availability of applicant's service outweigh any potential harm to protestant's operations * * *." Id. at 7, JA 155.
 
 
 7
 Cross-Sound appealed this decision to the Commission. B & PJ did not cross-appeal the Board's denial of B & PJ's request for authority for scheduled passenger service or commodities service. Nevertheless, the Commission not only affirmed the grant of excursion authority but also removed the Board's restrictions limiting B & PJ to excursions. The Commission found that
 
 
 8
 the imposition of such limitation would be unduly restrictive and not in accordance with the evidence of record and current Commission policy. In any event, applicant adequately established a need for scheduled as well as excursion service and a limitation as noted above would only serve to hamper the ability of applicant to perform a comprehensive service with no corresponding benefit to the public interest. * * *
 
 
 9
 Interstate Commerce Commission Decision No. W-271 (Sub-No. 4) (Commission Decision), October 7, 1983, at 2, JA 225. After the Commission denied a stay of its ruling, Cross-Sound appealed to this court.
 
 II. ANALYSIS
 
 10
 Section 10 of the Administrative Procedure Act, 5 U.S.C. Sec. 706, governs our review of the Commission's decision to grant a certificate of public convenience and necessity. See Ritter Transportation, Inc. v. ICC, 684 F.2d 86, 88 (D.C.Cir.1982); accord Steere Tank Lines, Inc. v. ICC, 703 F.2d 927, 929 (5th Cir.1983). We must vacate the grant of authority if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law * * * [or] unsupported by substantial evidence." 5 U.S.C. Sec. 706(2)(A) & (E). Review under these standards is, of course, "searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); see also Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-286, 95 S.Ct. 438, 441-42, 42 L.Ed.2d 447 (1974). Rather, our review ensures that the agency has "taken a 'hard look' at the salient problems," and has "engaged in reasoned decision-making" essential to the informed and even-handed implementation of public policy. Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C.Cir.1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). See Int'l Ladies Garment Wkrs Union v. Donovan, 722 F.2d 795, 814-815 (D.C.Cir.1983) ("keystone" of our inquiry is ensuring reasoned decisionmaking).
 
 
 11
 In the present case Cross-Sound raises three challenges to the Commission's grant of a certificate to B & PJ. First, the Commission's conclusion that the grant to B & PJ would serve "the public convenience and necessity" was arbitrary and capricious and unsupported by substantial evidence. Second, the Commission's failure to require B & PJ to specify the routes and ports it intended to serve was arbitrary and capricious and ignored Section 10922(f)'s requirement that a water carrier certificate "shall specify each route over which, and each port between which, the carrier may provide transportation." 49 U.S.C.A. Sec. 10922(f). Third, the Commission's refusal to permit discovery or hold an oral hearing was arbitrary and capricious. Pressing these arguments, Cross-Sound challenges the entirety of the Commission's grant of authority to B & PJ--the Board's initial grant of excursion authority and the Commission's expanded grant of authority for scheduled service.
 
 
 12
 Though Cross-Sound poses these arguments as discrete challenges to the Commission's decision--and they are susceptible of analysis as such--we think that Cross-Sound's critique is best understood as a broad challenge to the Commission's overall decisional process in this case. At bottom Cross-Sound contends that the Commission lacked--and balked at gathering--sufficient record evidence to permit a reasoned application of statutory directives. We agree. In our judgment, the Commission's conduct in this case does not approximate reasoned decisionmaking. At an irreducible minimum, the Commission must give reasoned consideration to all material facts and issues, Greater Boston Television Corp., supra, 444 F.2d at 851, and "articulate 'a rational connection between the facts found and the choice made.' " Bowman Transportation, supra, 419 U.S. at 285, 95 S.Ct. at 441 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)); see Port Norris Express Co. v. ICC, 687 F.2d 803, 810 (3d Cir.1982); Star Delivery & Transfer v. United States, 659 F.2d 81, 83 (7th Cir.1981). The Commission has failed in this case to abide by these prerequisites of sound decisionmaking. The dearth of supporting record evidence undermines the rationality of the Commission's decision to reverse the Review Board and grant B & PJ authority for scheduled service. And the Commission's stubborn refusal to expand the evidentiary base by requiring greater specificity from B & PJ or by permitting Cross-Sound to ferret out relevant evidence through discovery or oral hearing is unsupportable.
 
 
 13
 The grant of authority for scheduled service. The Review Board initially granted B & PJ authority for only irregular excursion service. The Board limited the grant in this way because B & PJ had made no showing of public need for scheduled service. Review Board Decision, supra, at 6, JA 154. Under current Commission rules implementing the "public convenience and necessity" standard of Section 10922(a) the applicant for a certificate bears the burden of coming forward with evidence of a public need for the proposed service. Rules Governing Applications for Operating Authority, 364 ICC 508, 522-524 (1980).[1] Reversing the Review Board's determination and expanding the grant to encompass scheduled service, the Commission made the bald assertion that B & PJ "adequately established a need for scheduled as well as excursion service." Commission Decision, supra, at 2, JA 225. The opinion did not pinpoint what evidence made out this showing of need. Nor did the Commission even acknowledge that it had reversed the Review Board on the question whether B & PJ had shown need, much less explain the reasons for its reversal.
 
 
 14
 No detailed analysis is needed to conclude that the Commission's unsupported assertion that B & PJ made a showing of public need is arbitrary and capricious. When deciding that an applicant has made a sufficient showing of need under Section 10922, "[a] specific basis for the conclusion must be articulated." Refrigerated Transport Co. v. ICC, 663 F.2d 528, 531 (5th Cir.1981). The Commission has articulated no specific basis for its conclusion. It has neither made basic factual findings nor explained how the record supports its decision or why the Review Board's view of the record was erroneous. The Commission rests instead on ipse dixit and a broad appeal to deregulatory policies. These justifications neither jointly nor severally comport with the reasoned decisionmaking requirements of Section 10 of the APA. See Star Delivery & Transfer, supra, 659 F.2d at 83 ("It is not enough that the ICC merely recite the ultimate conclusions of fact mandated by statute as prerequisites for the ICC to issue certificates of convenience and necessity. The Commission's decisions must also apprise a party 'of the factual material on which the agency relies * * *.' " (quoting Bowman Transportation, supra, 419 U.S. at 288 n. 4, 95 S.Ct. at 443 n. 4)).
 
 
 15
 We note that the decision to grant scheduled authority also fails the "substantial evidence" test of Section 10 of the APA. See 5 U.S.C. Sec. 706(2)(E). Our review of the record confirms the Review Board's conclusion that with respect to evidence of need for scheduled service the cupboard is bare. B & PJ presented only affidavits from tour operators and these affidavits expressed only a need for excursion service. "There must be a rational relationship between the authority granted and the substantial evidence of public need for service for which the authority is sought." Refrigerated Transport, supra, 663 F.2d at 531. Since B & PJ presented evidence of need only for excursion service, the grant of authority for scheduled service is unsupportable.
 
 
 16
 The failure to require specificity in ports and routes. Though the grant of excursion authority is not marred by a complete lack of supporting evidence, that grant and the grant of scheduled authority are gravely flawed in other respects that convince us that the Commission has not given requisite consideration to the salient problems in this proceeding. The crucial flaw that undermines the entire decisional process is, in our judgment, the Commission's adamant refusal to seek specific information about the ports and routes B & PJ intended to serve. Without such information, the Commission simply could not have reached a reasoned decision as to whether B & PJ's proposed service would be in the public interest.
 
 
 17
 The parties have spent considerable energy arguing whether the statute requires applicants to specify all routes and ports to be served. Section 10922(f) does state that "[e]ach certificate issued to a person to provide transportation as a water common carrier shall specify each route over which, and each port between which, the carrier may provide transportation." 49 U.S.C.A. Sec. 10922(f). On the one hand, it is difficult to see how the Commission can name routes and ports in the certificate if the applicant has not named routes and ports in its application. On the other hand, the Commission correctly notes that this section on its face applies to certificates, not applications. Moreover, as the Commission would have it the rule is more honored in the breach than the observance. On this appeal, however, we need not settle whether Section 10922(f) mandates complete specificity of ports and routes for water carrier applicants. At least with respect to requests for authority to operate on large expanses such as Long Island Sound, the Commission must have some specific knowledge of routes and ports to be served in order to comport with the APA's reasoned decisionmaking requirements in determining whether the applicant has shown a need for the proposed service and whether the proposed service might affect existing service in ways adverse to the public interest. See Rules Governing Applications for Operating Authority, supra, 364 ICC at 522-524 (stating that Section 10922 inquiry focuses on applicant's showing of need and protestant's claim of effects on existing service adverse to public interest).
 
 
 18
 The facts of the present case amply illustrate the point. B & PJ proposes to serve various ports on Long Island Sound but does not specify which. Cross-Sound intervenes to challenge the application on the ground that B & PJ's proposed service might affect Cross-Sound's existing service in a way injurious of the public interest. For example, B & PJ might compete directly with Cross-Sound only in the summer months and thereby skim the profits from this busy season that would have otherwise assured Cross-Sound's financially tenuous winter service. See Protest of Cross-Sound Ferry Services, Inc., supra, at 10-12, JA 53-55. Cross-Sound cannot make this challenge any more concrete because it does not know whether B & PJ will compete directly on the New London to Orient Point route, or indirectly on a route that connects ports near New London and Orient Point, or not at all. Thus the Commission must decide whether B & PJ has shown a need for its proposed service despite not knowing what routes this service will cover. Similarly the Commission must decide whether that service will injure Cross-Sound and the public interest without knowing whether B & PJ will even compete with Cross-Sound. Under these circumstances the Commission cannot possibly undertake a reasoned resolution of the questions before it.
 
 
 19
 Faced with this situation, the Commission had two reasonable courses available. It could have ordered B & PJ to provide more specificity with respect to routes and ports. Or it could have granted Cross-Sound's request for discovery (or at least an oral hearing) to permit Cross-Sound to learn B & PJ's specific plans. The one course not reasonably open to the Commission was to evaluate B & PJ's application on the incomplete administrative record the Commission had before it. The Commission could not reasonably have decided whether B & PJ had shown need for its service when the Commission did not know what routes B & PJ intended to serve.[2] And the Commission acted unreasonably in refusing to seek--or permit Cross-Sound to unearth--the information necessary to evaluate Cross-Sound's protest and then dismissing that protest as "speculative." See Review Board Decision, supra, at 7, JA 155. Such Catch-22 thinking is the antithesis of reasoned decisionmaking. Because the Commission acted with insufficient evidence before it and failed to gather needed facts, we vacate the decision to award B & PJ a certificate as arbitrary and capricious and unsupported by substantial evidence.
 
 III. CONCLUSION
 
 20
 In reaching this decision we do not restrict the Commission's ability to allocate burdens of production and persuasion as between applicants and protestants on the "public convenience and necessity" issue. Nor do we restrict the Commission's discretion to structure its procedures so as to elucidate material facts efficiently. We do, however, restrict the Commission's discretion to take substantive and procedural shortcuts that give short shrift to the APA's requirement of reasoned decisionmaking. In the present case the Commission has for all practical purposes blinded itself to the facts necessary to its statutorily mandated duty to find that the grant of authority will serve the "public convenience and necessity." Such behavior cannot be squared with the requirement that the agency genuinely consider the salient problems presented in the record. Accordingly we vacate the Commission's decision and remand for new proceedings consistent with this opinion and the Commission's basic duty to abide by the mandates of Section 10 of the APA.
 
 
 21
 Vacated and remanded.
 
 
 
 *
 Of the Fourth Circuit, sitting by designation pursuant to 28 U.S.C. Sec. 294(d) (1982)
 
 
 [1]
 The parties disagree as to the inquiry the Commission must undertake in evaluating applications for water carrier authority. The Commission claims that the inquiry is identical to that undertaken for motor carriers under the Motor Carrier Act of 1980. Pub.L. 96-296. Under this approach, the applicant must make an initial showing of public need for the service and the protestant then bears a burden of persuasion on the issue whether the proposed service will affect existing service in a way inimical to the public interest. The Commission's Rules Governing Operating Authority, 364 ICC 508 (1980), explicitly sets forth this allocation of burdens, see id. at 522-524, and explicitly makes this approach applicable to water carriers as well as motor carriers, see id. at 562. Cross-Sound argues that this approach is appropriate for motor carriers but not water carriers. The burden of this argument is that when Congress passed the Motor Carrier Act of 1980 it meant to relax entry standards for motor carriers, but intentionally left unchanged the stricter entry standards for water carriers, which require the applicant to show need for the service, the inadequacy of existing service, and a lack of injury to the public interest
 Given the present posture of the case, we need not resolve this dispute. Assuming arguendo that the Commission is correct, its application of the more lenient standard does not comport with the reasoned decisionmaking requirements of Sec. 10 of the APA, 5 U.S.C. Sec. 706 (1982).
 
 
 [2]
 The Commission argues that it gleaned sufficient information about B & PJ's proposed service from the points mentioned in the affidavits from tour operators appended to B & PJ's application for authority. See Appendices to Application of B & PJ for Water Common Carrier Authority, JA 20-40. The points, the Commission contends, constitute "representative points" indicative of B & PJ's proposed service, and such representative points suffice under Commission practice. See Interstate Commerce Commission Decision No. W-271 (Sub-No. 4), July 12, 1983, at 6, JA 154. For several reasons, this argument will not justify the Commission's failure to require specificity. First, these points are at most representative of need for excursion authority and thus are no support whatever for the grant of scheduled authority. Second, it is highly questionable whether reliance on representational points is permissible under the statute in the water carrier context. The concept of representational points originated in the motor carrier context, and the statutory sections governing motor carriers specifically contemplate "territorial" grants of authority. See 49 U.S.C.A. Sec. 10922(e)(1)(C) (West Supp.1984). For water carriers, in contrast, the specificity requirement of Sec. 10922(f) would seem to constrain the Commission's ability to rely on representational points